# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROGER L. PORTER,  )
                    Plaintiff,  )   Civil Action No. 12 - 101
)
                    v.  )   Chief Magistrate Judge Lisa Pupo Lenihan
)
WARDEN HOGUE, DEPUTY  )
ROOFNER, LT. MS. SCHILLINGS,  )   ECF No. 38
MR. CAMPBELL, and MR. FINK,  )
)
                  Defendants.  )

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the Amended Motion for Partial Summary Judgment (ECF No. 38) filed by the Defendants, employees of Armstrong County: Warden David C. Hogue, Deputy Warden Matt A. Roofner, Lt. Ms. Schilling, Mr. Campbell, and Mr. Fink. For the following reasons, their motion will be granted.

**I.    FACTUAL BACKGROUND**

Plaintiff's claims stem from his confinement in the Armstrong County Jail ("ACJ") in 2010. He alleges that he was denied procedural due process in a disciplinary hearing that resulted in his confinement in the Special Housing Unit ("SHU") for 120 days, during which time he alleges that he was denied medical care in the form of an eye examination and prescription contacts or glasses. From February, 2010, through July, 2010, Plaintiff sent repeated requests to see an eye doctor but he was told that he could not do so until his

1

disciplinary detention had ended.[1] Plaintiff's cash slips, wherein he sought withdrawal of his own money to pay for the appointment and the transportation costs to the eye doctor were denied and he was told on numerous occasions that eye glasses were not a serious medical need. He was also told that he could purchase reading glasses from the jail, but Plaintiff maintained that he needed prescription glasses, not reading glasses, and without them he could not see but two feet in front of him. In the early morning hours of May 4, 2010, Plaintiff slipped on some water that had leaked out from his sink and he fell, hitting and injuring his forehead. He claims that he did not see the water because he did not have his glasses. As a result of the fall, he was eventually taken to the hospital where he was diagnosed with an acute scalp laceration and received staples for his wound. The radiology report from his x-ray revealed normal findings.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as

---

[1] Apparently Plaintiff had an eye appointment scheduled for a date in February, but it was canceled after he received a misconduct for bringing contraband into the jail and sanctioned to time in the SHU.

presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### III. DISCUSSION

Defendants move for summary judgment on the claims against them in their official capacity, as well as Plaintiff's claim for violations of the Pennsylvania Constitution and for his claim of "intentional negligence." They also move to strike Plaintiff's request for punitive damages against Armstrong County.

#### A. Official Capacity Claims

The United States Supreme Court has held that suing a party in his or her official capacity is not a suit against the official but rather is a suit against the official's office. Kentucky v. Graham, 473 U.S. 159, 165 (1985). As such, it is no different from a suit against the entity itself. Graham, 473 U.S. at 166; Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989).

Here, the claims brought against Defendants in their official capacity are claims against Armstrong County.

Municipal liability for the actions of its employees may not be predicated on a theory of *respondeat superior*. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). However, a municipality may be held liable "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Monell, thus, created a "two-path track" to municipal liability, depending on whether a section 1983 claim is premised on a municipal policy or custom. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

In Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990), the Third Circuit expanded on these two sources of liability:

> A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

Id. at 1480 (quoting Beck, 89 F.3d at 971) (citations omitted). Under either route, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews, 895 F.2d at 1480)).

Here, there is a complete lack of evidence in the record to suggest that Armstrong County had an official policy or well-settled custom of denying medical care to its inmates. The mere fact that Plaintiff was not permitted to see an eye doctor while he was in disciplinary

4

confinement because Defendants believed that his medical needs were not sufficiently serious enough to warrant immediate medical attention is insufficient to show such a policy or custom. Therefore, Defendants are entitled to summary judgment as they are sued in their official capacities.

### B. Intentional and Gross Negligence

In his Complaint, Plaintiff clearly asserts a claim for "intentional negligence." Such a tort is an oxymoron and does not exist in the law. However, in his brief in opposition to the motion for partial summary judgment, Plaintiff states that he is not actually making a claim for intentional negligence. Instead, he appears to be asserting a claim for gross negligence and arguing that the defendants are not immune from liability under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. §§ 8541-8564. Plaintiff, however, is incorrect.

The PSTCA grants governmental immunity to local agencies, including municipalities, against claims for damages on account of any injury to a person or to property by their own acts or the acts of their employees. Immunity is abrogated for negligent acts falling into one of eight proscribed categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa.C.S. § 8542(b). None of these statutory exceptions are applicable here. Moreover, under the PSTCA, a local agency is also exempt from its own acts or the acts of its employees that constitute "a crime, actual fraud or willful misconduct," such as intentional torts. 42 Pa.C.S. § 8542(a)(2). Here, a judgment against the individual Defendants in their official capacity would impose liability on Armstrong County, which is immune from suit as stated above. Therefore, the individual Defendants are entitled to

5

immunity under the PSTCA, in their official capacities, as to Plaintiff's claim of gross negligence.

An employee of a local agency acting within the scope of his duties enjoys the same immunity as the local agency, 42 Pa.C.S. § 8545, but the employee may be stripped of his immunity when he engages in conduct that is found to constitute "a crime, actual fraud or willful misconduct," id. at § 8550. In other words, the PSTCA extends immunity to negligent acts by employees except those falling into the eight proscribed categories, but abrogates immunity for individual employees who commit intentional torts. *See*, *e.g.*, Maloney v. City of Reading, No. 04-5318, 2006 WL 305440, at *5 (E.D. Pa. Feb. 8, 2006). Therefore, Plaintiff's gross negligence claim does not vitiate the immunity provided to the individual Defendants under the PSTCA, nor does his claim of deliberate indifference as alleged in connection with his claim under the Eighth Amendment to the United States Constitution. *See* McNeal v. Easton, 598 A.2d 638, 642 (Pa. Commw. Ct. 1991) ("A finding of 'willful misconduct' under section 8550 requires a party to have acted with even more than gross negligence or recklessness."). *See also* Hernandez v. York County, No. 06-1176, 2007 U.S. Dist. LEXIS 86505, 2007 WL 4198017, at *6 (M.D. Pa. Nov. 26, 2007) (finding defendant immune under the PSTCA from the plaintiff's claim of gross negligence); Harrison v. Ammons, No. 05-2323, 2007 U.S. Dist. LEXIS 53367 at FN2 (M.D. Pa. July 24, 2007) (the PSTCA would likely afford municipal actor immunity from plaintiff's claim of gross negligence); Ratti v. Wheeling Pittsburgh Steel Corp., 758 A.2d 695, 703 (Pa. Super. Ct. 2000) ("[G]ross negligence constitutes conduct more egregious than ordinary negligence but does not rise to the level of intentional indifference to the consequences of one's acts."). *See also* Boria v. Bowers, No. 06-4383, 2007 U.S. Dist. LEXIS 68794, 2007 WL 2726338, at *6 (E.D. Pa. Sept. 17, 2007) ("Mere negligence or deliberate indifference is not sufficient to break

through governmental immunity on the grounds of willful misconduct.") (citing Owens v. City of Philadelphia, 6 F. Supp. 2d 373, 395 (E.D. Pa. 1998)). Accordingly, the Defendants are immune from liability under the PSTCA from Plaintiff's claim of gross negligence.

### C. Claims under the Pennsylvania Constitution

Plaintiff is seeking damages for violation of the Pennsylvania Constitution. Although the Supreme Court of Pennsylvania has not yet ruled on the issue of whether the Pennsylvania Constitution provides a cause of action for damages for state constitutional violations, the Commonwealth Court as well as federal district courts explicitly hold that no such rights exist.[2] *See* Ryan v. General Machine Products, 277 F. Supp. 2d 585, 595 (E.D. Pa. 2003) (citing cases). *See*, *e.g.*, Bodnar v. Wagner, 2010 U.S. Dist. LEXIS 289, at *20-21 (M.D. Pa. Jan. 5, 2010) (agreeing with other courts that "there is no private cause of action available for seeking monetary damages for violations of the Pennsylvania Constitution"); Taylor v. Moletsky, 2010 U.S. Dist. LEXIS 6260 (E.D. Pa. Jan 26, 2010) (same); Jones v. City of Philadephia, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("neither statutory, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution"), *appeal denied*, 909 A.2d 1291 (2006). Accordingly, Plaintiff's claim for damages for violation of the Pennsylvania Constitution fails.

### D. Punitive Damages

Plaintiff seeks punitive damages against each Defendant; however, to the extent that he does so against the individual Defendants in their official capacities, he may not do so because

---

[2] When making a prediction as to how the Pennsylvania Supreme Court would rule, the court "must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," among other sources. Knopick v. Connelly, 639 F.3d 600, 606 (3d Cir. 2011) (quoting Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010)).

punitive damages are not available against municipalities under 42 U.S.C. § 1983, which is, in this case, Armstrong County. *See* City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Therefore, the Court will strike his request for punitive damages in this regard.

**E. Due Process**

Although Defendants did not move for summary judgment on Plaintiff's due process claim the Court will exercise its authority under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and *sua sponte* dismiss it at this time for failure to state a claim upon which relief may be granted.[3] Plaintiff alleges that he was denied procedural due process in his disciplinary hearing that resulted in his confinement in the SHU for 120 days. He claims that he was not given advance notice of the disciplinary misconduct and he was not allowed the opportunity to be heard or call witnesses. He states that he was just found guilty of the misconduct as it was written.

In analyzing any procedural due process claim of this type, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Protected liberty

---

[3] Pursuant to the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* (28 U.S.C. § 1915(e)(2)) or seeks redress against a governmental employee or entity (28 U.S.C. § 1915A). The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). This action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner proceeding *in forma pauperis* and seeking redress from a governmental employee.

or property interests generally arise either from the Due Process Clause or from some state-created statutory entitlement. *See* Board of Regents v. Roth, 408 U.S. 564, 575 (1972).

However, in the case of prison inmates, the Supreme Court announced a standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself and concluded that state-created liberty interests could arise only when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483. In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement. Id. at 486.

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and do not give rise to due process claims. *See e.g.*, Crosby v. Piazza, 465 F. App'x 168, 2012 WL 641938 (3d Cir. 2012) (270 days of disciplinary segregation); Foster v. Sec'y, PA Dept. of Corr., 431 F. App'x 63, 65 (3d Cir. 2011) (held, "transfer to a restricted housing unit was not an atypical or significant hardship or a severe change in the conditions of his confinement" triggering due process protections); Milton v. Ray, 301 F. App'x 130 (3d Cir.

2008); Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (7 months disciplinary confinement).

In this case, Plaintiff's imposed sanction was 120 days of disciplinary custody. Since this sanction, standing alone, does not entail an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, the penalty imposed here does not implicate a liberty interest which triggers due process protection under the Fourteenth Amendment in this correctional setting. Accordingly, Plaintiff's due process claim will be dismissed.

**IV. CONCLUSION**

For the aforementioned reasons, Defendants are entitled to summary judgment as to Plaintiff's claims against them in their official capacities, his claim of intentional and/or gross negligence and his claim for violation of the Pennsylvania Constitution. Additionally, his request for punitive damages against the Defendants in their official capacity is struck and his due process claim is *sua sponte* dismissed. Plaintiff's deliberate indifference to medical needs claim in violation of the Eighth Amendment remains. An appropriate order follows.

**AND NOW**, this 25th day of October, 2013;

**IT IS HEREBY ORDERED** that Defendant's Amended Motion for Partial Summary Judgment (ECF No. 38) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's due process claim is *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Roger L. Porter
    JS 4865

1100 Pike St.
Huntingdon, PA 16654
*Via First Class Mail*

Counsel of Record
*Via ECF Electronic Mail*