# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROGER L. PORTER, | ) | |
| | ) | Civil Action No. 12 - 101 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| WARDEN HOGUE, DEPUTY ROOFNER, LT. MS. SCHILLINGS, MR. CAMBELL, and MR. FINK, | ) ) ) ) | ECF No. 72 |
| Defendants. | | |

## MEMORANDUM OPINION

This case is before the Court on the Motion for Summary Judgment (ECF No. 72) filed by the Defendants; employees of Armstrong County: Warden David C. Hogue, Deputy Warden Matt A. Roofner, Lt. Schilling, Mr. Campbell, and President of Armstrong County Prison Board Mr. Fink. For the following reasons, the motion will be granted in part and denied in part. The motion will be granted to the extent that Defendants Campbell and Roofner will be dismissed for lack of personal involvement. The motion will be denied in all other respects because the Court finds that disputes of material fact exist which must be resolved by a jury.

**I.    Factual Background**

Roger Porter ("Plaintiff") was transferred to the Armstrong County Jail from the Indiana County Jail on or about January 13, 2009. (Defs.' Ex. 1, ECF No. 73-1 at p.5, Indiana County Jail Act-84 Transfer Health Information.)[1]

---

[1] According to the Transfer Health Information Form, Plaintiff brought with him to the Armstrong County Jail a pair of eyeglasses. Id. However, there is no information in the record as to what happened with that pair of glasses after he was processed into the Armstrong County Jail.

1

On or about February 23, 2010, Plaintiff requested money from his account for an eye examination that had previously been scheduled before he was transferred. (Pl.'s Ex. A, Cash Slip.) However, Defendant Campbell denied this request without explanation on February 26, 2010. Id.

On February 28, 2010, Plaintiff requested information from Defendant Roofner on why he was refused access to the money to carry out his scheduled appointment for his "bad" eyesight, and this request was denied by Warden Hogue with an explanation that Plaintiff could get an eye examination after he got out of the Special Housing Unit ("SHU"), which he was in for receiving a misconduct. (Pl.'s Ex. B, Inmate Request Form.)

On March 7, 2010, Defendant Hogue also denied Plaintiff's request for an eye examination despite Plaintiff stating that his contacts were "bothering" him and he did not have glasses to replace them. (Pl.'s Ex. C, Inmate Request Form.)

On March 18, 2010, Plaintiff filed another request to Defendant Hogue stating that he was "basically blind," but this too was denied for the stated reason that reading glasses were available for purchase. Id. Instead of granting Plaintiff's request, Defendant Hogue asked where Plaintiff got contraband drugs, which had led to him receiving the aforementioned misconduct. Id.

Plaintiff was denied two more requests on March 22 and March 24 with Defendant Hogue stating that Plaintiff would receive treatment once his disciplinary time lapsed. (Pl.'s Ex. D, Inmate Request Form.)

On March 27, 2010, Plaintiff filed an Inmate Complaint Form, which was denied on March 29, 2010. (Pl.'s Ex. E, Inmate Complaint Form.) Plaintiff filed another Inmate Complaint Form on April 15, 2010, stating that his need for a medical appointment was "very

urgent" and that the reading glasses available in the prison were insufficient for his eyesight needs. (Pl.'s Ex. F, Inmate Complaint Form.) This request was denied by Warden Hogue on April 16, 2010 for the stated reason that Plaintiff would only be allowed to visit an eye doctor after he was "released from jail." Id. Another Complaint Form was filed on April 26, 2010, but was denied on May 3, 2010 for the stated reason that "glasses are not a serious medical need." (Pl.'s Ex. G, Inmate Complaint Form.)

Around 1:10 a.m. on May 4, 2010, Plaintiff slipped and fell on the wet floor of his cell. (Pl.'s Ex. H, Inmate Complaint Form.) Plaintiff stated in an Inmate Complaint Form that he slipped because he could not see properly without glasses or contacts. Id. This fall resulted in a deep gash approximately one and a half inches long that was bleeding profusely, along with neck injuries and light headedness. Id. Plaintiff called for help to Defendant Schilling, but Defendant Schilling only placed gauze pads on Plaintiff's head. Id. Plaintiff quickly bled through these and asked for further assistance, but Defendant Schilling refused. Id. Plaintiff had to wait until 2:23 p.m. the following day before he received any medical assistance. (Pl.'s Ex. H, Hospital Records.) He was transported to the local emergency room and received two staples to close his wound. Id. Plaintiff filed an Inmate Complaint Form on May 6, 2010, but the record indicates that this form was not responded to. (Pl.'s Ex. H, Inmate Complaint Form.)

After this incident, Defendant Hogue again denied Plaintiff's requests for eye care on June 15, 2010 and July 19, 2010. (Pl.'s Ex. L, Inmate Request Form.) Additionally, Plaintiff's Inmate Complaint Forms from June 28, 2010 and July 6, 2010 were denied by Defendant Hogue on July 9, 2010 and July 15, 2010, respectively. (Pl.'s Ex. M-N.) Plaintiff's Inmate Complaint Form from June 28, 2010 was denied for the stated reason that "eye glasses are not serious medical needs," and Plaintiff's Inmate Complaint Form from July 6, 2010 informed Plaintiff that

he "needed to put a slip in to see the doctor," and again that "eyeglasses are not serious medical needs." Id. Defendant Fink ultimately denied Plaintiff's appeals. (Pl.'s Ex. I-J.)

**II.     Summary Judgment Standard**

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine issue of material fact. Nat'l State Bank v. Fed.l Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing Celotex, 477 U.S. at 323-25). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e) (1963). See also Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing Celotex, supra).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible,

it is not necessary for it to be in admissible form.  *See* FED. R. CIV. P. 56(c)(2); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

## III. Discussion

### A. Exhaustion of Administrative Remedies

Defendants first defend against Plaintiff's complaint on the basis that Plaintiff did not sufficiently exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In sum, the PLRA requires prisoners to completely exhaust their administrative remedies prior to filing a federal claim.  Jones v. Bock, 549 U.S. 199, 202-03 (2007).  However, an inmate's failure to exhaust under the PLRA is an affirmative defense, the inmate is not required to specifically plead or demonstrate exhaustion in his complaint.  Id.  Failure to exhaust administrative remedies must be pled and proved by the defendant.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

As Plaintiff correctly notes, the Defendants' motion includes no argument that he failed to exhaust his administrative remedies; it is only a recitation of the law.  However, attached to the motion for summary judgment is the declaration of Warden David Hogue, who states that Plaintiff did not follow the Inmate Complaint System procedures as set forth in Paragraph 62 of the Inmate Handbook.  (ECF No. 73-1 at ¶¶ 7, 11.)

According to Warden Hogue, "[t]here are specific forms for complaints by inmates and specific forms for other 'requests'.  Requests are used by inmates for non-emergency needs and are not used to seek medical care or treatment nor are they used to make any type of complaint

5

relating to acts or failure to act of staff or other inmates." Id. at ¶ 8, n.1. "If the inmate is not satisfied with the answer they receive from the deputy warden, they may appeal in writing to the warden on an Inmate Complaint Form enclosing the original inmate complaint form and the response of the deputy warden." Id. at ¶ 9. "If the inmate is dissatisfied with the decision of the warden the inmate has the right to appeal the warden's decision in writing to the Armstrong County Prison Board President." Id. at ¶ 10.

Warden Hogue states that Plaintiff did not follow the proper procedures because (1) he did not use the appropriate form on 2/23/10 or 2/29/10 (Ex. A to Compl.); (2) he did not use the appropriate form on 2/28/10 (Ex. B to Compl.), 3/7/10, 3/18/10 (Ex. C to Compl.), 3/22/10, or 3/24/10 (Ex. D to Comp.); (3) and he did not follow proper procedure on 3/27/10 (Ex. E to Compl.), 4/15/10 (Ex. F to Compl.), 4/26/10 (Ex. G to Compl.), or 5/6/10 (Ex. H to Compl.). (ECF No. 73-1 at ¶¶ 11(a)-(b), 12.) Warden Hogue also declares that it was his understanding that Plaintiff had prescription eyeglasses in his possession as well as contact lenses, and at no time was he made aware of any medical need for an emergency vision examination. Id. at ¶ 13.

Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden Cnty., 728 F.3d 265, 271 (3d Cir. 2013) (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury); see also Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010) (signaling agreement with the Seventh Circuit case Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008), that "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge . . . .")

In this case, the record does not support the Defendants' exhaustion defense. Their submissions to the court fall short of meeting their burden of demonstrating that Plaintiff did not

exhaust his administrative remedies. Specifically, Warden Hogue avers that Plaintiff did not use the appropriate forms eleven times. However, almost every one of those eleven Request or Complaint Forms submitted by Plaintiff was answered directly by Warden Hogue, and not once did Warden Hogue deny Plaintiff's request because he used the wrong form. In fact, his responses to those requests and complaints completely belie his averment that he was unaware that Plaintiff had an urgent vision impairment which needed medical attention.

The record indicates that, at the very least, Defendant Hogue was aware of Plaintiff's situation starting in March 2010. Moreover, Plaintiff twice appealed to Defendant Fink who agreed with Warden Hogue's assessment and informed Plaintiff that the "Armstrong County Jail does not provide glasses or contacts for any inmates" and that "[r]eading glasses are available to purchase if they are needed." (Pl.'s Exs. I, J.) The Court is unclear of what else Plaintiff could have done to grieve his issue. Therefore, based on the record before us, the Court must deny Defendants' request for summary judgment on this ground.

B. Plaintiff's Eighth and Fourteenth Amendment Claims

Plaintiff's claim is predicated on his assertion that Defendants were deliberately indifferent to is visual impairment needs while he was in the Armstrong County Jail, from approximately February 23, 2010, to at least October 23, 2010, when they failed to ensure that he received an eye examination for prescription eye glasses.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."

Farmer v. Brennan, 511 U.S. 825,832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In the context of medical treatment, an inmate must prove two elements: (1) that he was suffering from a "serious medical need," and (2) that prison officials were deliberately indifferent to the serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious". A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzara, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

With the above standards in mind, the Court will now consider Plaintiff's claim.

1. Serious Medical Need

Although a "very slight visual impairment" does not constitute a serious medical need, see Borrelli v. Askey, 582 F.Supp. 512, 513 (E.D. Pa. 1984) (plaintiff suffered from only "a very slight visual impairment" of the sort that did not typically require eyeglasses and which a doctor did not expect to lead to "sustained visual deterioration or other physical difficulties"), eyeglasses can be considered a serious medical need, see Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996) (holding that an inmate who needed prescription eyeglasses for double vision and loss

of depth perception had a serious medical need), and the denial of eyeglasses by prison officials may constitute an Eighth Amendment violation, see id., see also Newman v. Alabama, 503 F.2d 1320, 1331 (5th Cir. 1974) ("[s]ince equally severe harm can be occasioned by the unavailability of eyeglasses . . ., we should not be any less prone to disparage these deficiencies). "These precedents are solidly grounded in the fact that untreated poor vision can generate suffering and discomfort that is difficult to scientifically evaluate." Kemppainen v. Aransas County Det. Ctr., 2010 WL 4918958, at *7 (S.D. Tex. Nov. 23, 2010) (plaintiff denied prescription eyeglasses and eye examinations when his eyeglasses broke, leaving him unable to attend to basic hygiene and preventing him from engaging in daily activities) (citing Koehl, 85 F.3d at 88).

The principal harm one would expect from a plaintiff deprived of eyeglasses would be precisely the sort of pain and suffering that is difficult to measure, such as severe headaches. See Benter v. Peck, 825 F. Supp. 1411, 1418 n.4 (S.D. Iowa 1993) (granting injunctive relief to a prisoner denied eyeglasses where he alleged "discomfort" and an inability to engage in normal prisoner activities). Though these consequences don't inevitably entail pain, they adequately meet the test of "suffering" that Gamble recognized is inconsistent with "contemporary standards of decency."

In Tormasi v. Hayman, 452 F. App'x 203 (3d Cir. 2011), an unpublished decision out of the Third Circuit Court of Appeals, the plaintiff had requested multiple appointments with the prison eye doctor beginning from December 25, 2006. Id. at 204-05. By January of 2008, the plaintiff indicated that the matter was "urgent" due to "dizziness and disorientation, and [he] frequently fell or bumped into objects as a result of his 'severely blurred' vision." Id. The plaintiff was seen by an eye doctor and prescribed eyeglasses in April of 2008 but had to request another appointment five months later because he had not been given the eyeglasses. Id.

In <u>Tormasi</u>, the Third Circuit found that a reasonable jury could find that the plaintiff's injury was serious because his blurred vision resulted in dizziness that caused him "to fall and walk into objects," with one fall leading to a dislocated jaw. <u>Id</u>. The court found that many of the plaintiff's injury's – dizziness, light-headedness, falling and sustaining physical injury – can easily be understood by a layperson as being obvious without expert testimony. <u>Id</u>.

Plaintiff states that like <u>Tormasi</u> his vision is more than "slightly impaired". He has attached a copy of his eye prescription to support this claim. (ECF No. 99-1.) Also like <u>Tormasi</u>, Plaintiff's requests to see an eye doctor were repeatedly denied, and without prescription eyeglasses, he allegedly experienced double vision, headaches and dizziness, and he complained that he was "basically blind". Ultimately, Plaintiff fell and hit his head because he could not see, and as a result, he sustained multiple injuries such as neck pain and a deep gash on his forehead that required staples.

The Third Circuit Court of Appeals has held that a prisoner's claim of deliberate indifference to a serious medical need requires expert testimony when the seriousness of the injury would not be apparent to a lay person. <u>Boring v. Kozakiewicz</u>, 833 F.2d 468, 472-74 (3d Cir. 1987) (concluding that jury would not be in a position to decide whether ulnar nerve injury, scalp condition, knee disorder, and migraine headaches could be classified as "serious"). However, it appears that courts have found that injuries such as Plaintiff's are the type that can easily be understood by a layperson without the need for an expert. <u>See</u> <u>Tormasi</u>, 452 F. App'x at 206.

The Court finds that, like <u>Tormasi</u>, a reasonable jury could find that Plaintiff's injury was sufficiently serious for purposes of the Eighth Amendment. Moreover, it is worth noting that

Defendants did not provide any evidence to dispute the seriousness of Plaintiff's injury. Therefore, summary judgment must be denied on this ground.

2. Deliberate Indifference

Turing to the issue of deliberate indifference, a prisoner must demonstrate that the official acted with more than mere negligence. Estelle, 419 U.S. at 105; Wilson v. Seiter, 501 U.S. 294, 303 (1991). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837.

Defendants claim that they "cannot be held to have knowledge that the failure of plaintiff to be allowed to leave the jail while on disciplinary status to have his eyes examined would result in plaintiff falling in his cell." (ECF No. 73 at p.8.) This argument, however, goes directly to the issue of causation. While the Third Circuit has stated that "a Section 1983 plaintiff must demonstrate that the defendant's actions were the proximate cause of the violation of his federally protected right, see Martinez v. California, 444 U.S. 277, 284-85 (1980), the presence of the requisite causation is normally a question of fact for the jury." Rivas v. City of Passaic, 365 F.3d 181 (3d Cir. 2004) (citing Estate of Bailey v. County of York, 768 F.2d 503, 511 (3d Cir. 1985), *overruled on other grounds by* DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189 (1989). While a finding that Defendants' conduct was a proximate cause of Plaintiff's injuries is not a foreordained conclusion, neither can that issue be taken away from the jury at this juncture.

Defendants also argue that Plaintiff has produced no evidence of a medical need for eyeglasses and therefore cannot show that the Defendants knowingly and unreasonably disregarded an objectively tolerable risk of harm or that they knew of and disregarded an excessive risk to his health or safety. It warrants mentioning that the absence of medical

evidence on the question of Plaintiff's vision impairment at the time Plaintiff was confined in the Armstrong County Jail is in large part due to Defendants own conduct. Defendants have not submitted any medical records, in essence conceding to the fact that Plaintiff's vision was never subjected to a proper evaluation. In both Benter and Koehl, prison authorities made available documentation providing some medical evidence regarding vision for those courts to consult. Benter, 825 F.Supp. at 1415; Koehl, 85 F.3d at 87. Defendants have not done so, and this omission will not be held against Plaintiff. Such a ruling would be grossly unfair and would provide incentives for prisons to withhold medical examinations lest the results ultimately confirm the allegations made in prisoner civil rights actions.

Finally, Defendants argue that they cannot be held liable for Plaintiff's injuries because liability can be assessed only against persons with authority to make treatment decisions concerning a prisoner's medical care. In support, they rely on Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), where the Third Circuit held that non-medical prison officials, cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference absent reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner. See Spruill, 372 F.3d at 236. This case is distinguishable from the situation in Spruill where that plaintiff raised claims against defendants *after* the point at which he was first under medical care by medical professionals. Id. See also Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment was proper with respect to non-medical defendants who did not respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor).

According to the record, Plaintiff was never under the care of a medical professional. Moreover, the record seems to support the fact that Defendants had actual knowledge, or reason

to believe, that Plaintiff was not under supervision of medical personnel during the relevant time period and thus not receiving medical treatment for his vision impairment. See Spruill, 372 F.3d at 236. Thus, their argument is belied by the very case upon which they rely. As the Third Circuit stated, "dismissal was proper in Spruill because the plaintiff had failed to plead facts suggesting that the official was aware of the alleged inadequacies in medical care, not because prison administrators are categorically exempt from a supervisory role over medical personnel." Barkes v. First Correctional Medical, Inc., 766 F.3d 307, 327 (3d Cir. 2014). Thus, Defendants argument that they should be granted summary judgment because they did not have the authority to make treatment decisions concerning the plaintiff necessarily fails.

The Third Circuit has held that a prison official is deliberately indifferent where he/she "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). Based on the above, the Court finds that a reasonable jury could find that Defendants were deliberately indifferent to Plaintiff's serious needs. Accordingly, summary judgment will be denied.

B. Personal Involvement

Next, Defendants claim that there is no evidence in the record of personal involvement by Hogue, Roofner, Schilling, Campbell, and Fink. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case. As explained in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988):

> [A] defendant in a civil rights action must have personal involvement in alleged wrongs . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation

or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Id. at 1207.

While the Court makes no determination as to ultimate liability, Plaintiff makes numerous assertions of personal involvement by Defendant Hogue, and several by Defendants Schilling and Fink. Specifically, with respect to Defendants Hogue and Fink, courts have held that "[w]here a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly." Harnett v. Barr, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y 2008) (citing cases). Defendants Hogue and Fink were aware of Plaintiff's vision complaints through Plaintiff's filing of numerous Inmate Request and Complaint Forms, which Defendant Hogue consistently denied for various reasons. Thus, they had actual knowledge of Plaintiff's situation and an opportunity to remedy it. This is sufficient to establish their personal involvement. Similarly, Plaintiff sufficiently establishes Defendant Schilling's personal involvement by alleging that he refused to provide him with medical attention after he fell and sustained serious physical injuries.

However, apart from denying two of Plaintiff's cash slips, wherein he requested money to pay for his eye examination, there are no other allegations of involvement by Defendant Campbell. Additionally, the only allegation against Defendant Roofner is that Plaintiff wrote to him on February 28, 2010, asking why Defendant Campbell had denied his cash slips. According to Plaintiff's Inmate Request Slip, it was Defendant Hogue who responded to that specific inquiry, not Defendant Roofner. There is nothing in the record that leads the Court to believe that either Defendant Campbell or Defendant Roofner had actual knowledge of

Plaintiff's medical needs and participated in the alleged wrongdoing. Therefore, the claims against Defendants Campbell and Roofner will not be allowed to proceed any further and Defendants' summary judgment motion will be granted only as to this one issue.

C. Qualified Immunity

Defendants argue that, as a matter of law, they are protected by qualified immunity.

Despite participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity operates to ensure that, before they are subjected to suit, officers are put on notice that their conduct is unlawful. Id. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 818-19. A defendant has the burden to establish that he or she is entitled to qualified immunity. Burns v. PA Dept. of Corrections, 642 F.3d 163, 176 (3d Cir. 2011). "[T]he defense of qualified immunity is available only for damages claims – not for claims requesting prospective injunctive relief." Hill v. Kutztown, 455 F.3d 225, 244 (3d Cir. 2006).

The qualified immunity analysis generally has two steps. Pearson, 555 U.S. at 232. Generally, the first inquiry in a qualified immunity analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. Id. "If the plaintiff fails to

make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). If, however, the plaintiff can establish a constitutional violation, the next step is to ask whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "This is an objective inquiry, to be decided by the court as a matter of law." Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004).

In the qualified immunity analysis, it is often appropriate to consider whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right before considering whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Pearson, 555 U.S. at 236. However, the court is permitted to exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case. Id.

As set forth above, Plaintiff has asserted a viable claim of a violation of his constitutional rights so we now proceed to the second step of the qualified immunity analysis − whether the right was clearly established. Here, the "contours" of the rights Plaintiff enjoyed were "sufficiently clear" to be deemed "clearly established". Indeed, Plaintiff's constitutional right to receive adequate medical care was explicitly recognized by the United States Supreme Court in Farmer v. Brennan, 511 U.S. 825, 832 (1994), and prior to that, the high Court held that the denial of medical care to prisoners violates the Eighth Amendment in Estelle v. Gamble, 429 U.S. 97 (1976). Because Estelle had already "set forth the framework for analyzing claims of deliberate indifference to serious medical needs" as early as 1976, immunity will not be granted

to the Defendants. Consonery v. Pelzer, 558 F.App'x 271, 274-75 (3d Cir. 2014) (finding that lower court correctly denied warden's qualified immunity claim regarding inmate's complaint that officials refused him dental treatment for four months despite many attempts by him to schedule an appointment).

A separate order will issue.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Roger L. Porter
JS 4865
1100 Pike St.
Huntingdon, PA 16654

Counsel of Record
Quinn A. Cozzens
Emily Kinkead
*Via Electronic Mail*

| | | |
|---|---|---|
| ROGER L. PORTER, | ) | |
| | ) | Civil Action No. 12 - 101 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| WARDEN HOGUE, DEPUTY ROOFNER, LT. MS. SCHILLINGS, MR. CAMBELL, and MR. FINK, | ) ) ) | ECF No. 72 |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons set forth in the Memorandum Opinion filed contemporaneously herewith, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 72) is granted in part and denied in part. The motion will be granted to the extent that Defendants Campbell and Roofner will be dismissed for lack of personal involvement. The motion will be denied in all other respects because the Court finds that disputes of material fact exist which must be resolved by a jury.

Dated: March 18, 2015

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Roger L. Porter
JS 4865
1100 Pike St.
Huntingdon, PA 16654

Counsel of Record
Quinn A. Cozzens
Emily Kinkead
*Via Electronic Mail*